[No. 1974.]

CHARLIE ATKINSON *v.* THE STATE.

1. THEFT — INDICTMENT.— If in a prosecution for theft under an indictment which alleges the ownership of the property stolen to be in some person to the jurors unknown, it transpires on trial that the ownership could have been ascertained by the exercise of reasonable diligence, it becomes the duty of the trial court, in the event of conviction, to award a new trial.

2. SAME.— INDICTMENT in such a case should not be predicated alone upon the testimony taken before an examining court, if the witnesses be accessible, and could have informed the grand jury of the ownership of the stolen property.

APPEAL from the District Court of Comanche. Tried below before the Hon. T. B. Wheeler.

The conviction in this case was for the theft of one head of cattle, the property of some person to the grand jury unknown, in Comanche county, Texas, on the 1st day of July, 1885. A term of two years in the penitentiary was the penalty assessed against the appellant. Tom Stewart was also charged in the indictment, but the appellant was alone upon trial, a severance having been awarded.

James Smart was the first witness for the State. He testified that he saw the defendant, whom he was well acquainted with, on the morning of May 18, 1885. The defendant at that time had in his possession a small red bull, about two years old, branded D M. The final letter of this brand had evidently been changed from an inverted N, the first upward stroke being added to make an M. The change had been very recently made, as indicated by the fresh blood on it. The defendant had the bull, when witness saw them, tied to a post some fifteen or twenty steps distant from witness's house. The witness was unable to say that the additional stroke to the old brand had not been made by a snag. The animal described had run on that range with the cattle of the witness's

mother for more than a year, to the positive knowledge of the witness. During that time the witness had paid no especial attention to the brand. From the time that he first saw it on the range, the witness had regarded the little red bull as an estray. He could not say how his neighbors had regarded it, as he had never asked any of them, nor heard any of them express any opinion about the matter. Witness had never heard of an owner of the bull. Tom Stewart was with the defendant when the latter had possession of the animal as described. They spent the previous night, May 17, 1885, at the house of the witness's mother, and the witness saw them drive the bull off next morning, and heard the defendant say that he intended to drive the bull to the pasture of one Gurley. About the middle of the next week, the witness saw the same bull back on the same range. The house of the witness's mother was situated on a neighborhood road in Comanche county. When the defendant brought the bull up to the gate at the said house, he was led with a rope secured to his horns. At the gate they threw the rope down, and drove the bull before them. After they had passed the gate, they took the route, driving the bull, towards old man Tunnell's field. They traveled a road which, though a neighborhood road, was generally much traveled. All of this occurred in Comanche county, Texas.

Gid Smart was the next witness for the State. He testified to substantially the same facts as did the first witness, and in addition that he had been familiar with the bull described for more than a year prior to the time it was driven off from the range by the defendant and Tom Stewart. He had often noticed the brand as it originally was, and was certain that it was D ⅥI up to the morning of May 18, 1885. The witness saw the bull back on the range a few days after it was taken away as before described.

Doc Hardin, the next witness for the State, testified that he saw the bull mentioned in the indictment prior to May 18, 1885, at which time the brand was D Ⅵ. He next saw the animal some two or three weeks after the defendant was arrested for stealing it. The brand then had the appearance of having been changed to D M by running a line down from the top of the first line of the Ⅵ. The witness regarded this animal as an estray, and had heard other residents of the neighborhood speak of it as an estray. Up to the examining trial of the defendant, when arrested on the charge of stealing this animal, the witness had never heard of an owner or claimant of the bull. Witness heard, subsequent to that trial, that the animal belonged to John Harris. Witness was not before the grand jury which found the indictment in this case.

Mr. Elias testified, for the State, that he had known the bull in question for about one year prior to May 18, 1885, during which time it ran on the range. The original brand on the animal was D M. Witness knew that neither the defendant nor Tom Stewart had any stock in their possession when arrested, save the animals they were riding. Witness was present and saw the defendant and Stewart arrested. The arrest was made on May 19, 1885, which was Wednesday. On the following Saturday the witness saw the bull back on the range. The brand had been changed to D M. The change appeared to have been made by scraping the hair and grain of the skin with a knife or other sharp instrument in such manner as to make the left stem of the M. Up to the day of the examining trial of this defendant, upon the charge of stealing this animal, the witness knew it as an estray, and knew that it was so regarded in the neighborhood. On the day of the examining trial, the witness and John Ayers examined the records of marks and brands, and found the original brand of record. Witness was in town during the first week of the present term of the court, but was not before the grand jury which indicted the defendant for the theft of this animal.

John Beard was the next witness for the State. He testified that he knew the defendant, and saw him and Tom Stewart together in May, 1885. They were then in possession of a small red bull, which they were driving along the lane near John Tunnell's field. The bull was dragging a rope secured to his horns. He was an animal about two years of age, small in size and red of color, but witness did not notice his brand. Witness asked defendant and Stewart where they got the animal. They replied that they got him "over on Leon," that they had sold the animal and were now taking him to the prairie.

John Ayers testified, for the State, that he had known the little red bull mentioned in this indictment for a considerable time prior to the arrest of the defendant upon the charge of having stolen it. The witness, up to the day of the arrest of the defendant, had regarded the animal as an estray, and had heard several of the neighbors speak of it as an estray. No one seemed to know of its owner, or that any one claimed it. The witness examined the record of marks and brands of Comanche county a few days subsequent to the arrest of the defendant, and found the original brand recorded, which record bore the indorsement of transfer to John R. Harris. When the witness made this discovery he went to Mrs. Harris to inquire about the ownership of the animal. Mrs. Harris, who lived

within four hundred yards of the court-house, told the witness that John Harris owned the animal.

Mrs. Harris was the next witness for the State. She testified that she was the mother of John R. Harris, who died on the 14th day of October, 1884. The property left by John R. Harris had been divided among his heirs. Some of the property which he possessed at his death had never been secured by his representatives.

T. O. Moore was the next witness for the State. He testified that he was the foreman of the grand jury which presented the bill of indictment in this case. As the foreman of that grand jury, he returned into the district court of Comanche county, on behalf of the grand jury, the indictment which charged the defendant with the theft of the bull in question. Witness identified the indictment and his signature to the same, and testified that the animal, of the theft of which it charged the defendant and Tom Stewart, was an estray, so far as the grand jurors knew when they returned the indictment. From the evidence adduced before them in their examination into the case, the grand jurors arrived at the conclusion that the animal was an estray, and that its owner was unknown.

Cross-examined, the witness testified that the only inquiry made by the grand jury, when they found the indictment, as to the ownership of the animal, was confined to the written evidence adduced at the examining trial, which was submitted to them by Justice of the Peace Brown, who held the said examining trial. The grand jury made no examination of the records of marks and brands of Comanche county, before it voted the indictment in this case, nor did it call any witnesses before it to testify in person, before voting the indictment. Witness knew Elias Odell, the Smart boys, Doc Hardin and John Ayers, witnesses on this trial, and knew that they lived in Comanche county within six and eight miles of the court house. None of the said witnesses were before the grand jury, nor was any effort made to secure their attendance to testify in person. He had been advised that it was within the power of the grand jury to return an indictment upon the testimony taken before the examining trial, as it was reduced to writing, if it believed such evidence sufficient. The grand jury had a very large amount of work before it, and made no further examination into the question of ownership than to look to the written evidence brought up from the examining court. He made no examination of the records of marks and brands.

The State next introduced in evidence the certificate of the county clerk of Comanche county, certifying that the record of the marks and brands of Comanche county showed that the D M brand was

recorded in the name of George W. Dickens, and that the same bore the indorsement, "Transferred to John R. Harris."

The motion for new trial raised the questions discussed in the opinion.

*Jenkins & Lindsey,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

Hurt, Judge.    This is a conviction for the theft of a two-year-old bull, the property of some person to the grand jurors unknown. Upon the trial it appears that the bull belonged to the estate of John Harris, and that the mark and brand upon the bull were recorded in the county of the prosecution.    No witness was before the grand jury, the bill being found upon the written evidence taken before the examining court.    Two of the witnesses who were before the examining court, though not informed at that time, learned, however, before the grand jury met, that the bull belonged to Harris.    This information was obtained from the records.

It is a well settled rule that when the grand jury could have ascertained the name of the owner of stolen property by the use of reasonable diligence, it is their duty to do so, and, failing in this duty, a new trial should be granted. (*Brewer* v. *The State,* 18 Texas Ct. App., 456; *Williamson* v. *The State,* 13 Texas Ct. App., 514; *Jorasco* v. *The State,* 6 Texas Ct. App., 238.)

In this case, though the means were quite accessible, there was not the slightest effort made by the grand jury to discover the owner, and hence, this being developed on the trial, a new trial should have been granted.

While we do not intend to intimate that an indictment presented without having the witnesses before the grand jury would be bad, or that this matter could be inquired into by the party indicted in any manner, still we desire to condemn such practice.

Because a new trial should have been granted upon the ground above stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 28, 1885.]